UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SELVIN YOVANI GARCIA GONZALEZ,<br><br>Petitioner,<br><br>v.<br><br>KRISTI NOEM, Secretary of the Department of Homeland Security et al.,<br><br>Respondents. | Case No. 2:26-cv-01228-HDV-ADS<br><br>**ORDER GRANTING PRELIMINARY INJUNCTION [4]** |

## I. INTRODUCTION

This case concerns the government's detention of a noncitizen, Selvin Yovani Garcia Gonzalez ("Garcia Gonzalez" or Petitioner"), who has lived in the United States for over twelve years.

Before the Court is Petitioner Selvin Yovani Garcia Gonzalez's *ex parte* application for a temporary restraining order to release Petitioner from detention under the terms of his prior order of supervision, and enjoin Respondents from removing Petitioner to a third country absent notice and an opportunity for him to apply for protection under the Convention Against Torture. *Ex Parte* Application for Temporary Restraining Order and Preliminary Injunction ("Motion") [Dkt. 4]. The briefing and supporting evidence (or lack thereof) shows that the government has provided Garcia Gonzalez with a dearth of due process throughout his detention. Specifically, the government has failed to comply with the detailed requirements governing the revocation of release under 8 C.F.R. §§ 241.4(l) and 241.13(i), leaving Garcia Gonzalez in the dark regarding the reasons for his recent detention and depriving him of an opportunity to present evidence as required. While the government may wish to wield its power to enforce immigration laws swiftly and forcefully, it cannot simply ignore a noncitizen's statutorily-mandated opportunity to be heard.

Rules matter. Hearings matter. In recognition of this cornerstone principle of our jurisprudence, a growing chorus of district courts have found that—in similar cases—the government's unlawful detention and revocation of withholding warrants immediate release.

The Motion is granted.

## II. BACKGROUND

### A. Factual Background

Petitioner Selvin Yovani Garcia Gonzalez was born in Guatemala in 1994. Petition for Writ of Habeas Corpus ("Petition") ¶ 15 [Dkt. 1]. Although stated in his Petition and Motion that Garcia Gonzalez was issued a Notice to Appear on September 4, 2014, he has since obtained documents that show he was actually issued a Notice of Intent/Decision to Reinstate Prior Order on June 12, 2014, and was placed in withholding only proceedings on September 4, 2014. Petitioner's Reply ("Reply") at 1 [Dkt. 11]; Supplemental Declaration of Megan Brewer in Support of *Ex Parte*

Application for Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction ("Supp. Brewer Decl.") ¶¶ 4, 5, Ex. F, G [Dkt. 11-1]. On December 12, 2014, Petitioner was ordered released on bond. Supp. Brewer Decl. ¶ 6, Ex. H.

On May 29, 2018, the immigration judge ("IJ") granted withholding of removal under the Convention Against Torture ("CAT"). Petition ¶ 17; Declaration of Megan Brewer in Support of *Ex Parte* Application for Temporary Restraining Order and Order to Show Cause Re: Preliminary Injunction ("Brewer Decl.") ¶ 7, Ex. B [Dkt. 4-1]. Petitioner was placed on an order of supervision after he was granted withholding of removal; he reported regularly, and did not violate any laws. Motion at 1; Brewer Decl. ¶ 11, Ex. E; Supp. Brewer Decl. ¶¶ 7, 9, Exs. I, K. Petitioner appeared for his regularly scheduled appointment with immigration on February 5, 2026, and was taken into immigration custody. Petition ¶ 18; Motion at 1. Petitioner was informed that the government is seeking to remove him from the United States and that he would be deported to Mexico or another country. *Id.*; Brewer Decl. ¶ 11, Ex. E; Supp. Brewer Decl. ¶ 9, Ex. K. ICE gave Petitioner a document entitled "Notice of Revocation of Release." Reply at 2; Supp. Brewer Decl. ¶ 8, Ex. J. He did not otherwise violate the terms of his release. Petition ¶ 19; Brewer Decl. ¶ 11, Ex. E.

Prior to his revocation, Petitioner did not receive an informal or formal interview. Reply at 2; Supp. Brewer Decl. ¶ 9, Ex. K. Petitioner has not been afforded an opportunity to apply for protection from removal to Mexico. *Id.* Further, Petitioner has been certified as a victim of a violent crime who has assisted law enforcement and, in addition to his grant of withholding of removal, is also seeking protected status on this basis. Motion at 2; Brewer Decl. ¶ 11, Ex. E. Petitioner fears torture and persecution in Mexico; he also fears that Mexico will remove him to Guatemala, where he has been granted protection from removal. Petition ¶ 20; Supp. Brewer Decl. ¶ 9, Ex. K.

**B.   Procedural Background**

On February 5, 2026, Garcia Gonzalez filed the Petition. On the same date, he filed the Motion to release him from detention under the terms of his prior order of supervision, and enjoin Respondents from removing Petitioner to a third country absent notice and an opportunity for him to apply for protection under CAT. On February 6, 2026, the Court granted the Motion, in part, and enjoined the government from transferring, relocating, or removing Petitioner outside of the Central

3

1 District of California (including, but not limited to, transferring Petitioner to an ICE facility outside
2 of the Central District or removing Petitioner from the United States) pending further order of the
3 Court. [Dkt. 6]. The Court also ordered further briefing by the parties as to whether a preliminary
4 injunction should issue, with the Respondents' opposition due by February 18, 2026, and Petitioner's
5 reply due by February 23, 2026. *Id.*

6 Despite the Court's Order, Respondents did not file an Opposition on the due date of
7 February 18, 2026. In response to this failure, Petitioner filed a Notice of Non-Opposition to
8 Temporary Restraining Order/Preliminary Injunction urging the Court to therefore deem the
9 temporary restraining order and preliminary injunction unopposed. [Dkt. 8]; *See* C.D. Cal. L. R. 7-
10 12 ("The failure to file any required document, or the failure to file it within the deadline, may be
11 deemed consent to the granting or denial of the motion."). Belatedly, Respondents filed an
12 Opposition on February 19, 2026, [Dkt. 10]; Petitioner filed a Reply on February 23, 2026 consistent
13 with the Court-ordered briefing schedule. [Dkt. 11].

14 The Court heard oral argument on February 24, 2026. [Dkt. 12]. Notably, Respondent failed
15 to appear for the hearing. *See* C.D. Cal. L. R. 7-14 ("Counsel for the moving party and the opposing
16 party shall be present on the hearing date . . . Failure of any counsel to appear, unless excused by the
17 Court in advance . . . may be deemed consent to a ruling upon the motion adverse to that counsel's
18 position.").

19 **III.   LEGAL STANDARD**

20 To prevail on a motion for a preliminary injunction, the movant must establish that (1) it is
21 likely to succeed on the merits, (2) it is likely to suffer irreparable harm absent the preliminary
22 injunction, (3) the balance of equities tips in its favor, and (4) a preliminary injunction is in the
23 public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 5, 20 (2008); *Meinecke v. City of
24 Seattle*, 99 F.4th 514, 521 (9th Cir. 2024). Where the non-movant is a government entity, "the third
25 and fourth factors…merge." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of
26 Educ.*, 82 F.4th 664, 695 (9th Cir. 2023) (en banc). In the Ninth Circuit, the *Winter* factors may be
27 evaluated on a sliding scale such that "a stronger showing of one element may offset a weaker
28 showing of another." *Id*. at 684 (citing *Recycle for Change. v. City of Oakland*, 856 F.3d 666, 669

(9th Cir. 2017). "When the balance of equities tips sharply in the plaintiff's favor, the plaintiff must raise only serious questions on the merits—a lesser showing than likelihood of success." *Id.* (citation omitted).

## IV.   DISCUSSION

### A.   Jurisdiction

As an initial matter, the government argues that, under 8 U.S.C. § 1252(g), this Court does not have jurisdiction "to contest the government's decision to detain Petitioner pending his removal pursuant to a final removal order." Opposition at 2. The provision states:

> Except as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).

This section does not prohibit the Court from hearing Petitioner's claims here. It is true that this Court cannot review the substance of Petitioner's final order of removal nor prohibit ICE from detaining him if lawful procedures are followed. But Petitioner does not ask the Court to stay his removal from the United States under any circumstances. He simply asks, in sum, for the Court to (1) "order that Petitioner be released pursuant to the terms of his prior order of suspension," and (2) "order that the government may not remove him to a third country unless it first reopens his withholding-only proceedings for a full and fair hearing before an impartial judge on his claims for withholding and CAT to Mexico (or any country DHS intends to designate)." Reply at 1. In other words, Petitioner is challenging his detention on statutory and constitutional process grounds rather than challenging the order of removal itself. Indeed, the Supreme Court has held that "habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001); *see also Marquez v. I.N.S.*, 346 F.3d 892, 896 (9th Cir. 2003) (holding the district court has jurisdiction over a habeas claim where the petitioner claims detention violates substantive and procedural due process rights).

The Court therefore finds that Section 1252(g) does not preclude it from exercising

jurisdiction over Garcia Gonzalez's Petition.

B. *Winter* Factors

1. **Likelihood of Success**

Detention, release, and removal of individuals ordered removed—including those, like Petitioner, with pending "withholding only" proceedings—is governed by 8 U.S.C. § 1231(a). *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022). A noncitizen shall be removed within 90 days of the removal order, subject to a potential 90-day extension. 8 U.S.C. § 1231(a)(1). However, once that period passes, and the noncitizen is not removed, they "shall be subject to supervision under regulations prescribed by the Attorney General," which include statutorily mandated conditions. *Id*. § 1231(a)(3). The noncitizen may be detained beyond the removal period under certain conditions, but "if released, shall be subject to the terms of supervision in paragraph (3)." *Id*. § 1231(a)(6).

Moreover, 8 C.F.R. § 241.13(h) reiterates that "[t]he order of supervision shall include all of the conditions provided in section [1231(a)(3)]," as well as the conditions in "[8 C.F.R.] § 241.5, and shall also include the conditions that the alien obey all laws . . . ." In other words, even without a formal order of supervision, the released noncitizen is subject to certain conditions of release provided by statute and regulations, and ICE maintains its ability to detain the noncitizen outside the 90-day removal period. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 528–29 (2021) (holding that "an alien may be detained beyond the removal period or released under supervision" if they meet certain conditions).

Alongside the regulations establishing conditions of release are the regulations establishing the *revocation* of that release. *See* 8 C.F.R. §§ 241.4(l), 241.13(i); *Guzman Chavez*, 594 U.S. at 529 (citing 8 C.F.R. § 241.4 as "setting out procedures DHS must follow to impose continued detention" after the removal period). Both 8 C.F.R. § 241.4(l)(3) and § 241.13(i)(3) provide that, upon revocation of release, the noncitizen (1) "will be notified of the reasons for revocation of his or her release" and (2) will be given "an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." If the noncitizen continues to be detained after the informal interview, they shall

be scheduled for the "normal review process." 8 C.F.R. § 241.4(l)(3); 8 C.F.R. § 241.13(i)(2) ("[I]f the alien is not released from custody following the informal interview . . . the provisions of § 241.4 shall govern the alien's continued detention pending removal."). "The normal review process will commence with notification to the alien of a records review and scheduling of an interview, which will ordinarily be expected to occur within approximately three months after release is revoked." *Id.* § 241.4(l)(3). In simpler terms, in order to revoke release, the government must notify the noncitizen of the ***reason*** for the revocation and give them both an ***informal and formal interview***.

Here, none of that required process was followed.[1]

First, Petitioner was never notified of the reasons for revocation of his release. When he was re-detained on February 5, 2026, he was at his regularly scheduled check-in appointment, had reported regularly pursuant to his order of supervision, and had not violated any laws. Reply at 2, Brewer Decl. ¶ 11, Ex. E; Supp. Brewer Decl. ¶¶ 7, 9, Exs. I, K.

Second, there is no evidence that Petitioner has been afforded an informal or formal interview. Reply at 2, Supp. Brewer Decl. ¶ 9, Ex. K. The 90-day mandatory detention period under Section 1231 has long since passed, and it cannot be used to justify Petitioner's re-detention without the required procedures.

Both of these failures by the government are in clear violation of the due process requirements of 8 C.F.R. §§ 241.4(l)(1) and 241.13(i)(3). It is well established that government agencies are required to follow their own regulations. *United States ex rel Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). A growing number of courts have unequivocally found that the government's failure to follow its release revocation procedures—in particular the failure to give a detainee the required notice and interview—renders the re-detention unlawful. *See Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("Because there is no indication that an informal interview was provided to Petitioner, the court finds Petitioner is

---

[1] The Court cautions that the government is required to follow its laws and regulations for removing noncitizens to third countries, in addition to its rules regarding re-detention. *See* 8 U.S.C. § 1231(b); 8 C.F.R. § 241.15.

likely to succeed on his claim that his re-detainment was unlawful."); *Ceesay v. Kurzdorfer*, No. 25-cv-267-LJV, 2025 WL 1284720, at *21 (W.D.N.Y. May 2, 2025) ("[B]ecause ICE did not follow its own regulations in deciding to re-detain Ceesay, his due process rights were violated, and he is entitled to release."); *Liu v. Carter*, No. 25-3036-JWL, 2025 WL 1696526, at *3 (D. Kan. June 17, 2025) ("[B]ecause officials did not properly revoke petitioner's release pursuant to the applicable regulations, that revocation has no effect, and petitioner is entitled to release."); *Rombot v. Souza*, 296 F. Supp. 3d 383, 387–88 (D. Mass. 2017) (holding that ICE's failures to follow the release revocation procedures in 8 C.F.R. § 241.4 rendered the petitioner's detention unlawful).

The Court is persuaded that the reasoning of these sister courts is correct. These procedures are not optional or discretionary; they must be followed, and failure to do so renders the detention unlawful. For that reason, the Court finds that Petitioner is likely to succeed on his claim that the government did not properly revoke his release pursuant to 8 C.F.R. §§ 241.4 and 241.13.

### 2. Irreparable Harm

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Where, as here, the "alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005) (quoting Wright, Miller, & Kane, Federal Practice and Procedure, § 2948.1 (2d ed. 2004)). To be sure, "unlawful detention certainly constitutes 'extreme or very serious'" injury which "is not compensable in damages." *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017). Petitioner has shown evidence that he has been deprived of due process (*i.e.*, notice and an opportunity to be heard regarding the revocation of his release), likely rendering his re-detention unlawful. Moreover, the Ninth Circuit has recognized the "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities." *Id.* at 995.

Accordingly, this factor weighs strongly in favor of granting the Motion.

### 3. Balance of Equities and Public Interest

Finally, the balance of equities and public interest "tips sharply" in favor of Petitioner. As

the government notes, "[i]t is well settled that the public interest in enforcement of the United States's immigration laws is significant." Opposition at 6 (citing *United States v. Martinez-Fuerte*, 428 U.S. 543, 556–58 (1976)). This certainly includes enforcement of the immigration laws that provide processes for revoking release and deporting noncitizens to third countries. If the government is allowed to eschew these processes, it cannot guarantee the accuracy of the outcome. *See Ceesay*, 2025 WL 1284720, at *1, 12 ("Procedure is not mere puffery, a gesture that is irrelevant so long as the result is correct." "After all, without due process, there is no way to tell whether the result is in fact correct."). Further, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023) (en banc) (citation omitted). Indeed, a deprivation of due process is undoubtedly proper justification for injunctive relief. Because Petitioner has shown a likelihood that it is indeed unlawful, this factor also weighs strongly in his favor.

## V. CONCLUSION

For the reasons state herein, Petitioner Selvin Yovani Garcia Gonzalez's Motion for Preliminary Injunction is granted. Respondents are ordered to release Garcia Gonzalez from Respondents' custody forthwith. In addition, Respondents are enjoined and restrained from re-detaining or removing Garcia Gonzalez to a third country without notice and an opportunity to be heard.[2]

To be clear, this Order does not provide Garcia Gonzalez with blanket immunity from future removal—that is outside the Court's power for the reasons discussed above—but any future enforcement actions after release must comply with the required procedures.

---

[2] Federal Rule of Civil Procedure 65(c) requires that, prior to granting injunctive relief, the Court require a movant to pay security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." "Despite the seemingly mandatory language, Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)) (quotation modified). Accordingly, the Court waives the bond requirement here, as it is unlikely that the government will incur any significant cost and requiring a bond "would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public." *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 738 (C.D. Cal. 1996) (citation omitted).

1
2
3  Dated: February 25, 2026
4
_____
Hernán D. Vera
United States District Judge

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28